UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RACHEL SCHERBENSKE,

        NO. CIV. S-09-0717 LKK/KJM

    Plaintiff,

  v.

        O R D E R

WACHOVIA MORTGAGE, FSB, FKA
WORLD SAVINGS BANK, FSB, A
FEDERAL SAVINGS BANK; WELLS
FARGO BANK, N.A.; WELLS FARGO &
COMPANY, and DOES 1-100,

    Defendants.

_____/

This case appeared before the court on May 8, 2009 on plaintiff's motion for a temporary restraining order. In the interest of expedition, the court denied the motion by order on that day, indicating that it would explain the basis of the denial more fully in a subsequent order. This order is issued for that purpose.

////

////

1

## I. BACKGROUND AND ALLEGATIONS

**A. Background of the Motion**

This case originated in the Bankruptcy Court of the Eastern District of California. On March 16, 2009, defendants moved to withdraw the reference to the Bankruptcy Court, representing that this case raised claims under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq*. A review of plaintiff's First Amended Adversary Complaint in case number 2:09-ap-2010 confirmed this. After more than three weeks had passed, plaintiff had not filed an opposition to the motion to withdraw the reference and we granted the motion. That order provided that all previously scheduled hearings and previously entered orders in the adversary case in the Bankruptcy Court were vacated.

On April 29, 2009, plaintiff moved for a Temporary Restraining Order ("TRO"). Her moving papers stated that they sought to enjoin a February 11, 2009 hearing for an unlawful detainer action in Sacramento Superior Court. Due to this judge's unavailability, the motion was assigned to Judge Burrell who held a telephone conference with the parties on April 30, 2009. Based on that conference, he concluded the matter was not urgent enough to require resolution that week or the following week. He directed the parties to file a stipulated briefing schedule for resolution of the motion, for approval by this court. Instead, plaintiff filed a statement stating that the matter was set for hearing Monday, May 4, 2009. Judge Burrell then issued an order clarifying that this

had not been the order resulting from his telephonic conference with the parties and requesting that plaintiff contact his chambers if she wished to have the matter heard immediately. She did not do so.

Instead, plaintiff's counsel contacted this court's chambers and explained that there is an unlawful detainer hearing set in Sacramento Superior Court for May 11, 2009, stating that plaintiff desired a resolution of the TRO motion prior to that hearing. Accordingly, the matter was set for hearing on May 8, 2009.

**B. Plaintiff's Allegations**[1]

In her First Amended Adversary Complaint, plaintiff alleges that she is 68-year old who has resided in her Sacramento home for over 45 years. She allegedly began receiving phone calls from agents of defendant World Savings Bank (which apparently has since been acquired by defendant Wachovia Mortgage), urging her to refinance her home. In June 2004 she obtained a new adjustable rate mortgage from World Savings with an original principle amount of $137,500. She refinanced this loan in August 2005 with World Savings, with a principle balance of $172,000. In August 2006, she refinanced again with World Savings, with a principle balance of $192,000. According to plaintiff, the World Savings representative assured her that she would have a 5.0% fixed interest rate and that her monthly payments would be lower than those that she currently

---

[1] All allegations described herein derive from plaintiff's First Amended Adversary Complaint and are taken as true for the purposes of this motion only.

3

paid. At the time, plaintiff's monthly income was $1,385, from Social Security payments and her pension. Despite this, defendant allegedly falsified her loan documents to reflect a $2,700 monthly income.

Plaintiff's monthly payment on this loan began as $709.67 at a 6.64% adjustable interest rate. Because of the way the loan was structured, this amount did not cover the interest due and so the interest was compounded monthly. As a result, her monthly payments would increase dramatically each month. Moreover, the interest rate could also be adjusted each month, with a maximum of 11.95%.

Plaintiff alleges that she had no idea that this was how her loan worked. In mid-September 2007, she was contacted by defendants and told that she was $941.42 behind in her loan payments. She paid that amount and then continued to make monthly payments of $796.29 on her loan, which she believed to be the amount due. On February 19, 2008, defendants recorded a Notice of Default under the trust deed at the Sacramento County Recorder's Office. It stated that plaintiff was $5,191.09 past due on her payments.

In May 2008, plaintiff began attempting to settle the debt. During this time, the foreclosure sale of the property was set and then postponed several times. It finally occurred on October 20, 2008, although according to plaintiff, a supervisor in defendant's foreclosure department had assured plaintiff's counsel that it would be postponed from this date. The defendants purchased the property at the sale. On October 30, 2008, they filed an unlawful detainer action in Sacramento Superior Court.

Plaintiff has asserted causes of action for fraud, financial elder abuse, breach of fiduciary duty, violations of the Truth in Lending Act, violations of the Real Estate Settlement Procedures Act, and violations of California's Unfair business practices, all based on representations made to her about the terms of the mortgage loan. Plaintiff has also asserted causes of action for wrongful foreclosure, slander of title, breach of oral contract, breach of the covenant of good faith and fair dealing, and promissory estoppel based on defendants' conduct after filing the notice of default. She also asserts a claim for accounting. Plaintiff seeks a permanent injunction against the unlawful detainer action, rescission of the trustee's sale, and damages.

**C. Procedural History**

Plaintiff filed a Chapter 13 action in the Bankruptcy Court in December 2008, which automatically stayed all foreclosure proceedings. In January 2009, the Bankruptcy Court granted defendants' motion to lift the stay. Defendants then set an unlawful detainer hearing in Sacramento Superior Court. Plaintiff moved for temporary restraining order, which the Bankruptcy Court granted on April 22, 2009. The order enjoined defendants from seeking and/or obtaining an unlawful detainer against plaintiff to evict her from her home. The restraining order remained in effect until June 23, 2009, which was the date on which the court had set a hearing for plaintiff's pending motion for a preliminary injunction.

////

## II. ANALYSIS

Plaintiff has moved for a temporary restraining order enjoining the defendants from proceeding in an unlawful detainer action in Sacramento Superior Court, which plaintiff represented was scheduled for May 11, 2009. After considering the parties' briefing, their representations at oral argument, and the court's own research, the court concludes that it does not have power to issue such an order.

**A. The Court's Duty to Abstain from Interference In Related State Court Proceedings Under <u>Colorado River</u>**

In <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800 (1976), the Supreme Court held that in certain "exceptional" circumstances, a federal court may abstain from exercising its jurisdiction in the face of duplicative state proceedings. The Court recognized that generally the pendency of a similar or related state action is no bar to the court's exercise of jurisdiction. <u>Id.</u> at 817. However, when concurrent actions are proceeding in state and federal court, "reasons of wise administration of justice" may render dismissal of the federal action appropriate. <u>Id.</u>

In making this determination, the federal court should consider the convenience or inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained in the respective forums. <u>Id.</u> at 818 (citations omitted). The court should also consider the stage of the federal court proceedings and the presence in the suit of

substantial issues governed by state law. Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 16 (1983). Forum-shopping can, in some cases, warrant Colorado River abstention. Fireman's Fund Ins. Co. v. Quackenbush, 87 F.3d 290, 297 (9th Cir. 1996). The fact that the parties may not be identical in the two proceedings is not dispositive, because the "[i]t is enough if the two proceedings are substantially similar." Id. at 297 (citation omitted).

Here, plaintiff argues that Colorado River abstention is not appropriate because the federal and state actions are not substantially similar in that the state court proceeding for unlawful detainer only concerns possession of the real property at issue, not defendants' right to title. These rights and interests are distinct and the state court's ruling on the unlawful detainer action "cannot affect the title." Bekins v. Trull, 69 Cal. App. 40, 45 (1924) (reaching this holding in the context of a res judicata argument). Plaintiff also argues, without detail, that none of the Colorado River factors are present in this case.

Defendants argue that the Colorado River factors favor abstention. First, the state action was filed before the federal action (including the bankruptcy action) and, critically, is a *quasi in rem* action. See Park v. Powers, 2 Cal. 2d 590, 598-99 (1935). In Park, the court considered an adverse possession claim over a parcel of land. Id. at 592. The court described that even if the possessor had remained on the land, the title holder could have defeated adverse possession by having published an ejectment

notice (per California's substituted service statute) and mailed a copy to the possessor. Id. at 598. Doing so would be a *quasi in rem* action, the court explained:

> Actions relating to land, such as suits to quiet title, are denominated *quasi-in-rem*. Their distinguishing characteristic is that although not strictly *in rem*, since judgments therein are not binding upon the world, but conclusive only between the parties and their privies, they differ from actions purely *in personam* in that jurisdiction against a nonresident and absent defendant may be had upon constructive service.

Id. at 598-99.

Nevertheless, at oral argument, plaintiff asserted that unlawful detainer actions are *in personam*, not *quasi in rem*, citing Drybread v. Chipain Chiropractic Corp., 151 Cal. App 4th 1063 (2007) and Fragomeno v. Insurance Co. of the West, 207 Cal. App. 3d 822 (1989), overruled on other grounds by Vandenberg v. Superior Court, 21 Cal. 4th 815 (1999).[2] Neither of these cases directly addressed this question and do not appear to contradict the rule set forth in Park. In Drybread, 151 Cal. App 4th 1063, the court considered an unlawful detainer action brought by a commercial tenant against his sublessee. The court concluded that the action sounded in tort rather than in contract, because it was based on unlawful holdover after the expiration of the lease, not based on alleged breach of the lease itself. Id. at 1074-76. (The latter

---

[2] In any event, this court is bound by the decisions of the California Supreme Court; those of the state's Courts of Appeal are merely data for the court's consideration. West v. A.T.T., 311 U.S. 223, 237 (1949); Froyd v. Cook, 681 F. Supp. 699, 672 (E.D. Cal. 1988).

8

allegation, the court explained, would be the basis of a contract action for unlawful detainer. Id. at 1076.) The court did not discuss whether such an action should be considered *quasi in rem* in addition to being the basis for tort remedies.

In Fragomeno, 207 Cal. App. 3d 822, the court similarly considered an unlawful detainer action based on a commercial lease. The lessor had brought an unlawful detainer action against the lessee, asserting that the lessee had breached the lease agreement by operating its business in violation of the lease's terms. Id. at 826. The court held that this was properly characterized as a contract action because the alleged unlawful detainer occurred through breach of the lease's terms. Id. at 829-31. This holding was in the context of an indemnity action brought by lessee against its insurer, where the insurance policy covered the costs of defense for tort suits, not contract suits. Id. Because the unlawful detainer action was characterized as arising in tort, the court held that the insurer did not have a duty to indemnify for the costs of the defense of the suit. Id.

These cases clearly do not overrule the Park holding, which is controlling. Although the Park court considered whether parties has acquired title through adverse possession, the court discussed what the true title holders could have done to essentially dispossess the adverse possessors from the property, which it characterized as *quasi in rem* actions. The cases cited by plaintiff, characterizing an unlawful detainer action as either arising in tort or contract, do not necessarily contradict this,

9

as *quasi in rem* actions are denominated as "quasi" because they bear some features of being personal to the possessor.[3] See Shaffer v. Heitner, 433 U.S. 186, 199 n. 17 (1977) ("A judgment *quasi in rem* affects the interests of particular persons in designated property." (citations omitted)). Accordingly, the court is bound to conclude that the unlawful detainer action plaintiff seeks to enjoin is a *quasi-in-rem* action.

The Ninth Circuit has held that when applying the Colorado River abstention test, this fact is "dispositive," because "[i]n proceedings *in rem* or *quasi in rem*, the forum first assuming custody of the property has exclusive jurisdiction to proceed." 40235 Washington Street Corp. v. Lusardi, 976 F.2d 587, 589 (9th Cir. 1992) (per curium). There, the Ninth Circuit applied this principle and held that the district court had been required to stay a quiet title action filed in it when there was a concurrent quiet title action that had been filed first in state court. Id. The court relied on language in Colorado River comparing water rights, which were at issue there, to "the underlying rule requiring that jurisdiction be yielded to the court first acquiring control of the property." Colorado River, 424 U.S. at 819.

Here, Lusardi is controlling and compels the court to abstain
////
////

---

[3] Practically speaking, in an *in rem* action notice by publication has been traditionally accepted for actions involving the res, whereas in *quasi-in-rem* actions require personal service of notice of the actions, as the Park court described.

10

under Colorado River.[4] The unlawful detainer action is a *quasi in rem* action, as explained above. The trustee sale for the property in question occurred in October 2008 and, that same month, defendants filed an unlawful detainer action concerning the property in Sacramento Superior Court. Plaintiff did not file for bankruptcy until December and filed the instant adversary action subsequent to that. Accordingly, the Superior Court obtained "custody" of the property in question, per Lusardi, prior to this court or the Bankruptcy Court. Because this fact is dispositive, Lusardi, 976 F.2d at 589, the court is compelled to defer to the state court's jurisdiction over the property.

**B.   Applicability of the Anti-Injunction Act**

The court is also prevented from entering the temporary restraining order plaintiff seeks due to the Anti-Injunction Act, 28 U.S.C. § 2283. Under this statute, a federal court is barred from enjoining or staying proceedings in state court. 28 U.S.C. § 2283. The statute is interpreted broadly and includes injunctions directed at the parties rather than the state court itself.

---

[4] Relatedly, under Princess Lida of Thurn & Taxis v. Thompson, 305 U.S. 456, 466 (1939), when there are concurrent proceedings in state and federal court and both suits are *in rem* or *quasi in rem* actions, the court first assuming jurisdiction over the property maintains jurisdiction to the exclusion of the other. Although Lusardi discussed this principle in the context of Colorado River abstention, the Princess Lida rule is a stand-alone principle that does not necessarily implicate the abstention doctrine set forth in Colorado River. See Lusardi, 976 F.2d at 589, citing Donovan v. City of Dallas, 377 U.S. 408, 411 (1964) (discussing the Princess Lida rule). Consequently, whether the court considers the rule as dispositive in a Colorado River analysis or as a distinct and separate reason for deferring to the state court's jurisdiction, the same result obtains.

11

Atlantic L.R.C. v. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 287 (1970). There are statutory exceptions to the Act, which include 1) for injunctions expressly authorized by an act of Congress; 2) injunctions necessary to effectuate the judgment of the federal court; and 3) injunctions necessary in aid of the court's jurisdiction. 28 U.S.C. § 2283.

These exceptions are to be interpreted narrowly. See, e.g., Matter of Federal Shopping Way, Inc., 717 F.2d 1264, 1274 (9th Cir. 1983). That case is particularly informative in relation to the instant motion. There, the bankruptcy court had issued an order authorizing the trustee to sell certain real property in the bankrupt's estate free and clear of all encumbrances. Id. at 1265. The trustee sold and conveyed title to the property to certain third parties. Id. Subsequently, other third parties filed a quiet title action in state court. Id. at 1268. The trustee then moved the bankruptcy court to enjoin the quiet title action. Id. at 1269. The bankruptcy court did, holding that the state court action would impede the bankruptcy's court's "ability to function." Id. The district court affirmed this. Id. The Ninth Circuit reversed. Id. at 1275.

The sole issue before the Circuit court was "whether the Anti-Injunction Act . . . prohibits the bankruptcy court from issuing an injunction against a state court ejectment and quiet title action concerning real property which is not in the possession of the court and as to which the court never made any adjudication of title." Id. at 1269. The court first held that the first exception

of the Anti-Injunction Act plainly did not apply, as Congress had not expressly authorized Bankruptcy Courts to enjoin state courts. Id.

The court also held that the second exception, allowing injunction that are necessary to effectuate the judgment of a federal court, also did not apply because neither the bankruptcy court's order allowing the trustee sale nor its order allowing third-party, general unsecured claims to the bankrupt's estate were threatened by the state court proceeding. Id. at 1269-70. The bankruptcy court had never quieted title on the property at issue, and so any ruling by the state court would necessarily not undermine the bankruptcy court's orders. Id. at 1270-72. The court also observed that at the time of the state court action, the bankruptcy trustee had already conveyed the property, so the bankruptcy court had neither constructive or actual ownership of the property. Id.

Finally the court rejected the argument that the injunction was necessary to aid in the bankruptcy court's jurisdiction, which is the third exception to the Anti-Injunction Act. It held that the bankruptcy court would have no jurisdiction over the quiet title action simply because its outcome may affect the distribution of the assets of the estate. Id. at 1274. "That being the case," it concluded, "we fail to see how an injunction prohibiting the litigation of the title dispute in state court would in any way be necessary in aid of the court's lawful jurisdiction." Id.

The same result obtains here. There is no federal statute

authorizing a district court to enjoin a state unlawful detainer action. There are no prior orders of this court or the Bankruptcy Court that would be undermined by the unlawful detainer hearing. Finally, an injunction against the unlawful detainer action is not necessary to aid this court's jurisdiction. The Supreme Court has explained that this exception exists to protect a court's *in rem* jurisdiction. Vendo Co. v. LektroVend Corp., 433 U.S. 623, 641 (1977) ("[T]he necessary in aid of exception to § 2283 may be fairly read as incorporating this historical *in rem* exception."). Here, the court does not have *in rem* jurisdiction over the real property at issue.

At oral argument, plaintiff's counsel argued that the second exception applies, based on the plaintiff's having filed a complaint in this court. There is no authority that the court has discovered for such a broad interpretation of the exception. Indeed, in Matter of Federal Shopping Way, Inc., 717 F.2d 1264, the Ninth Circuit took a strict view of the exception, analyzing it in terms of each of the orders the Bankruptcy Court had issued in that case. Other courts have applied it equally narrowly. See Commerce Oil Refining Corp. v. Miner, 303 F.2d 125 (1st Cir. 1962); Jacksonville Blow Pipe Co. v. R.F.C., 244 F.2d 394 (5th Cir. 1957); U.S. v. Ford Motor Co., 522 F.2d 962 (6th Cir. 1975). The court is aware of no authority to interpret this exception to include the filing of a complaint by a plaintiff.

The cases plaintiff cited at the hearing in support of her position are not helpful. At oral argument, plaintiff's counsel

14

cited <u>Atlantic C.L.R. Co. v. Brotherhood of Locomotive Engineers</u>, 398 U.S. 281, 295 (1970), in support of her position. In that case, the Court held that a federal court could not issue an order prohibiting a state court from enjoining picketing at a railroad yard, where there had been no prior orders or judgment in the federal court. <u>Id.</u> at 292. The page referenced by plaintiff's counsel at the hearing directly contradicts her broad interpretation of the Anti-Injunction Act's exceptions, where the Court explained,

> First, a federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear. This rule applies regardless of whether the federal court itself has jurisdiction over the controversy, or whether it is ousted from jurisdiction for the same reason that the state court is. <u>Cf.</u> <u>Amalgamated Clothing Workers v. Richman Bros.</u>, 348 U.S. at 519-520. This conclusion is required because Congress itself set forth the only exceptions to the statute, and those exceptions do not include this situation. Second, if the District Court does have jurisdiction, it is not enough that the requested injunction is related to that jurisdiction, but it must be necessary in aid of that jurisdiction. While this language is admittedly broad, we conclude that it implies something similar to the concept of injunctions to protect or effectuate judgments. Both exceptions to the general prohibition of § 2283 imply that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case. Third, no such situation is presented here. Although the federal court did have jurisdiction of the railroad's complaint based on federal law, the state court also had jurisdiction over the complaint based on state law and the union's asserted federal defense as well.

Id. at 295. This holding is directly applicable to the instant case, particularly in that the High Court rejected application of an exception to the Anti-Injunction Act merely based on plaintiff's assertion of federal rights or causes of action arising under federal law. It is impossible for the court to fail to apply such a clear directive to the instant motion.

The second case plaintiff cited at the hearing was McNeill v. New York City Housing Authority, 719 F. Supp. 233 (S.D.N.Y. 1989), which is distinguishable from the instant case. There, plaintiffs were a group of public housing tenants who brought suit in federal court alleging that the City had failed to make repairs on its public housing, causing them to be evicted. Id. at 239. The plaintiffs alleged that the Housing Authority did not give adequate notice of eviction, did not have pre-termination procedures that were adequate under federal due process, and that the process generally violated federal rights and regulations. Id. The court concluded that the Anti-Injunction Act was not a bar the court's issuance of an injunction against eviction proceedings because the very gravamen of the plaintiff's suit was whether the pre-eviction proceedings violated federal law. Id. at 256. In this way, the injunction fell into the second exception because, essentially, the suit would be moot if the evictions were allowed to proceed. Id.

The McNeill court therefore discussed a very narrow question of how a federal court may act when plaintiff alleges that the very eviction proceedings themselves violate federal law. It does not necessarily stand for the proposition that any suit raising federal

law concerns can justify interference with a related state action. Such a broad reading would result in the exception swallowing the statute and contravenes every authority binding on this court providing for the narrow interpretation of the exception.

Accordingly, the court concludes that under the Anti-Injunction Act, the court cannot enter the temporary restraining order sought by plaintiff.

### III. CONCLUSION

For the reasons stated herein, the plaintiff's motion for a temporary restraining order is DENIED.

IT IS SO ORDERED.

DATED: May 15, 2009.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT